CITY OF DETROIT v. LAKE SUPERIOR PAPER CO.

1. COMMERCE—"IMPORTS"—EXEMPTION FROM TAXATION.

Newsprint paper manufactured in Canada, and imported into Michigan by the manufacturer duty free and stored in its warehouse in the original packages in which it was imported, awaiting delivery to the purchaser, is "imports" within the meaning of sections 8 and 10, art. 1, of the Federal Constitution, and not taxable.

2. SAME.

That the paper had been or was to be sold is immaterial, since the right to sell goes along with the right to bring it into the country.

Error to Wayne; Williams, J., presiding. Submitted April 4, 1918. (Docket No. 30.) Decided June 3, 1918.

Assumpsit by the city of Detroit against the Lake Superior Paper Company, Limited, for taxes. Judgment for plaintiff on a directed verdict. Defendant brings error. · Reversed.

*James E. Greene,* for appellant.

*Walter Barlow* (*Divie B. Duffield,* of counsel), for appellee.

Plaintiff brought the action to recover the amount of a tax it had levied upon defendant's personal property. With the plea defendant gave notice that it would show in its defense:

"That the personal property taxed by plaintiff, as alleged in its declaration, was at the time said tax was levied and assessed, in process of transit to its purchasers: to wit, newspaper publishers within and without the city of Detroit, Mich., and that said property had been imported from a foreign country, to wit, the Dominion of Canada, and was at the time said tax was levied and assessed, in the possession and under the control of its original importer, the defendant herein, incased in the original packages in which it had been imported."

At the trial the facts were stipulated. Defendant moved the court to direct a verdict in its favor on the ground:

"That the tax is in conflict with section eight (8), article one (1), clause three (3), and section ten (10), article one (1), clause two (2), of the Federal Constitution."

A verdict for plaintiff was directed, and judgment was entered on the verdict.

The stipulated facts are:

"The Lake Superior Paper Co., Limited, is a foreign corporation, organized and existing under the laws of the Dominion of Canada, and is located at Sault Ste: Marie, Ontario, Canada. The said corporation manufactures newsprint paper and sells a part of its output

to newspapers located and published in the city of Detroit, Mich., and other cities in the United States. The terms of the contract under which this paper is sold, provide that paper shall be delivered by the Lake Superior Paper Co., Limited, to the various vendees F. O. B., their respective pressrooms. A warehouse is maintained by the Lake Superior Paper Co., Limited, at the foot of Eighth street in the city of Detroit, into which some of the paper received at Detroit is delivered and from which the same paper is distributed to the various vendees by rail, if the vendees are located in other cities than the city of Detroit, and by motor truck agency employed and paid for by the Lake Superior Paper Co., Limited, if the vendees are located in Detroit. Part of the paper arriving in Detroit from the defendant's mills is distributed direct from the freight cars to the vendees who are located in Detroit. This is done whenever circumstances make it practicable and convenient. The paper is shipped from defendant's mills and arrives in Detroit in rolls or bales, varying in weight from 500 to 1,400 pounds. Each roll is wrapped at the mills with a heavy wraping paper and sealed at either end. This casing remains intact, undisturbed, from the time it leaves the defendant's mills at Sault Ste. Marie, Ontario, Canada, until final delivery to the various vendees at Detroit and elsewhere. The packages or rolls are not broken, until after they have left the hands of the Lake Superior Paper Co., Limited, and its agents.

"In 1916, the city of Detroit assessed the paper of defendant, imported from Canada and warehoused at the foot of Eighth street, in the city of Detroit, in the original packages or casings in which it had been shipped from Canada at the sum of $100,000.00 and levied a tax of $1,852.04 thereon. Defendant refused to pay the tax. The city of Detroit commenced this suit for the recovery of said tax and the defendant voluntarily accepted service of process herein and stipulated to the facts involved in this cause.

"The purpose of storing said paper in its said warehouse by said defendant is so that said defendant may have on hand at all times a sufficient supply of a surplus stock of paper to insure the fulfillment of its contracts with the several newspapers published in the

city of Detroit and other cities of the United States to supply said papers with the necessary paper to print said newspapers. The amount of stock of paper stored in said warehouse varies from time to time during the year but on April 1, 1916, when the assessment in question was made on said stock of paper so stored in said warehouse, there was stored in said warehouse paper belonging to the defendant of the value of $100,000.00, on which the taxes, $1,852.04, involved in this suit, were levied.

"Each roll of paper is marked at the mills prior to the time it is loaded on cars for shipment with the following marks: *"First,* size of roll; *second,* a roll number; *third,* the weight of the roll; and *fourth,* the name of the vendee publication to whom it is to be sent.

"A roll list is then made up in triplicate, one copy of which is sent forward to the vendee publication. This roll list shows that a roll of a certain size, weight and number has been shipped to the publication on a certain date in a car, the number and initial of which is also given in the roll list. The publication then checks up the paper it receives with this roll list to make sure that paper sent from the mill to it is the paper that is actually delivered to it.

"The only reason the paper is placed in the warehouse is because it is cheaper for the defendant to rent a warehouse than to pay demurrage charges on freight cars. The paper is stored in the warehouse merely as an incident to and as an integral part of defendant's contracts to deliver the paper F. O. B. pressrooms of the several publications to whom it sells its paper according to the terms of such contracts.

"Shipments of paper in question were made in car load lots consigned to Lake Superior Paper Company, Limited, for the Detroit Free Press or other publications to whom it was to be delivered.

"There were no United States customs duties required to be paid by defendant on this shipment of paper; that is, all paper involved herein entered the country duty free."

OSTRANDER, C. J. (*after stating the facts*). The provision of the Constitution which is first invoked by

appellant grants to the congress the power to lay and collect taxes, duties, imposts, and the other provision denies to the States, without the consent of the congress, power to lay any imposts or duties on imports or exports, except what may be absolutely necessary for executing inspection laws.

The goods of defendant were brought into the United States from a foreign country. Appellee contends that whether they were imports within the meaning of the Constitution depends upon whether a duty had or had not been laid on them by the United States, and reference is made to language found in opinions delivered by the Federal courts to the effect that the payment of duties to the United States gives the right to sell the thing imported, a right which can not be impaired or forbidden by a State. It is said, also, that the tax which was levied is not an impost tax or duty on articles brought into the country. Imports are things imported, the articles brought into the country. A duty on imports is not merely a duty on the act of importation but is a duty on the things imported. *Brown* v. *Maryland,* 12 Wheat. (U. S.) 419, 437, 438. It would seem to be obvious that in providing that certain articles may be admitted into the country duty free the congress is exercising the power granted to it in the Constitution, the exclusive power to lay duties on imports involving the power to determine whether any tax or duty shall be paid. In any event, the prohibition of State action in the premises remains. Although the tax was not laid as an impost tax or a duty, still, if "the tax intercepts the import, as an import, in its way to become incorporated with the general mass of property, and denies it the privilege of becoming so incorporated until it shall have contributed to the revenue of the State," it is a tax upon imports. *Brown* v. *Maryland,* 12 Wheat. (U. S.) 419, 443.

Although the indictment in *Brown* v. *Maryland, supra,* was against the importer for selling a package of dry goods, in the form in which it was imported, without securing a license required to be taken out by an act of the legislature of the State of Maryland, and the case on the facts in no way involved a tax or duty laid by the State upon the goods, the reasoning which denied the right to require a license involved the statement and application of principles which deny the right of a State to tax the import while it retains its character as an import and remains the property of the importer, in his warehouse, in the original form or package in which it was imported. *May* v. *New Orleans,* 178 U. S. 496, 507.

The question presented, then, is whether the goods had lost the character of imports when the tax was laid and had become a part of the general property of the State liable to State taxation. When the tax was laid, the goods were the property of the defendant, the importer, in its warehouse, in the original form and package in which they were imported. That they had been or were to be sold by the importer is true, but the right to sell them goes along with the right to bring them into the country. That under similar circumstances these goods if brought into the State from another State would be subject to taxation without offending the Federal Constitution, is perhaps true. *American Steel & Wire Co.* v. *Speed,* 192 U. S. 500. But it is said in the opinion in the case just referred to:

"Since *Brown* v. *Maryland,* 12 Wheat. (U. S.) 419, it has not been open to question that taxation imposed by the States upon imported goods, whether levied directly on the goods imported or indirectly by burdening the right to dispose of them, is repugnant to that provision of the Constitution providing that 'No State shall, without the consent of the congress, lay any imposts or duties on imports or exports.' Article I, sec. 10, paragraph 2. And *Brown*

v. *Maryland* also settled that where goods were imported they preserved their character, as imports, and were therefore not subject to either direct or indirect State taxation as long as they were unsold in the original packages in which they were imported. A recent case referring to the authorities and restating this elementary doctrine is *May* v. *New Orleans*, 178 U. S. 496. Assuming that the goods concerning which the State taxes in this case were levied were in the original packages and had not been sold, if the bringing of the goods into Tennessee from another State constituted an importation, in the constitutional signification of that word, it is clear they could not be directly or indirectly taxed. But the goods not having been brought from abroad, they were not imported in the legal sense and were subject to State taxation after they had reached their destination and whilst held in the State for sale. This is as conclusively foreclosed by the decisions of this court as is the doctrine resting upon the decision in *Brown* v. *Maryland*. *Woodruff* v. *Parham*, 8 Wall. (U. S.) 123; *Brown* v. *Houston*, 114 U. S. 622. The doctrine upon which the cases rest was this, that imports, in the constitutional sense, embraces only goods brought from a foreign country, and consequently does not include merchandise shipped from one State to another. The several States, therefore, not being controlled as to such merchandise by the prohibition against the taxation of imports, it was held that the States had the power, after the goods had reached their destination and were held for sale, to tax them, without discrimination, like other property situated within the State.

"Those two cases, decided, the one more than thirty-five and the other more than eighteen years ago, are decisive of every contention urged on this record depending on the import and the commerce clause of the Constitution of the United States. The doctrine which the two cases announced has never since been questioned. It has become the basis of taxing power exerted for years, by all the States of the Union. The cases themselves have been approvingly referred to in decisions in this court too numerous to be cited, and we therefore content ourselves by mentioning two of the cases where the doctrine was restated."

Applying the general rule is *In re Appeal of Pitkin & Brooks*, 193 Ill. 268, it must be held, upon the stipulated facts, that the goods taxed were not taxable.

The judgment is reversed, with costs to appellant.

BIRD, MOORE, STEERE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.