CITY OF DETROIT *v.* KENWAL PRODUCTS CORPORATION

Constitutional Law—Taxation—Imports.

> To qualify as imports for purposes of the constituitonal prohibi-
> tion against the levy by a state of imports or duties on imports
> it is sufficient that the goods have been imported, that they
> remain in their original packages in the hands of the importer,
> and that the person in possession of such goods qualify as an
> importer by having been the efficient cause of such importation,
> whether he purchased the goods directly from a foreign mer-
> chant or procured them by contract with a domestic importer,
> the substance and not the technical form of the transaction
> being determinative of the status of the goods (US Const, art 1,
> § 10, cl 2).

Appeal from Michigan State Tax Commission, affirming city of Detroit Board of Assessors. Submitted Division 1 March 5, 1968, at Detroit. (Docket Nos. 3,323, 3,330, 3,331, 3,333, 3,336, 3,349, 3,350, 3,351, 3,375, 3,377, and 3,527.) Decided December 2, 1968. Leave to appeal denied March 20, 1969. 381 Mich 811. Application for certiorari filed in Supreme Court of the United States June 25, 1969.

The city of Detroit Board of Assessors determined that the value of certain steel on the premises of Kenwal Products Corporation, a Michigan corporation, and 10 other defendant steel warehousing companies should be placed on the city of Detroit personal property assessment rolls. Defendants appealed to Michigan State Tax Commission which affirmed Board's determination. Affirmed. Defendants appeal. Orders of tax commission vacated.

Reference for Points in Headnote
51 Am Jur, Taxation § 104.

*Robert Reese,* Corporation Counsel, *Julius C. Pliskow* and *Arthur Yim,* Assistants Corporation Counsel, for plaintiff city of Detroit.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William D. Dexter* and *Richard R. Roesch,* Assistant Attorneys General, for Michigan State Tax Commission.

*Weiner & Bourgon,* for defendant Kenwal Products Corporation.

*Kassoff, Young, Gottesman & Kovinsky,* for defendants Ewald Steel Company and Ambassador Steel Company.

*Katz & Victor,* for Contractors Steel Company.

*Jerry Raymond,* for Titan Steel Company.

*Travis, Warren, Nayer & Burgoyne (Richard A. Cogan,* of counsel), for defendant Kraft Steel & Supply Company, Inc.

*Friedman, Meyers & Keys (Stanley M. Weingarden,* of counsel), for defendant Barsteel Corporation.

*Seymour J. Frank,* for defendant Kasle Steel Corporation.

*Allen Zemmol* and *Philip Weiss,* for defendants Paragon Steel Corporation and Advance Steel Company.

*Levin, Levin, Garvett & Dill (Thomas I. Klein,* of counsel), for defendant American Steel Corporation.

BURNS, J.   Eleven Detroit steel warehousing companies appeal by leave from tax commission decisions which ordered the value of certain steel to be placed on the city of Detroit personal property assessment rolls.   The steel in question was shipped from foreign ports to Detroit where after clearing customs it was delivered to defendants' warehouses and stored for resale.   Defendants claim that the steel was immune from property taxes because of US Const, art 1, § 10, cl. 2, and cases which have interpreted that provision.

In *Brown* v. *Maryland* (1827), 25 US (12 Wheat) 419 (6 L Ed 678), the Supreme Court invalidated a state licensing tax and held that a state could not tax imports as long as the property remained in its original form or package.   *Low* v. *Austin* (1872), 80 US (13 Wall) 29 (20 L Ed 517), expanded the principles of *Brown* v. *Maryland* to prohibit states from levying *ad valorem* taxes on goods which have not lost their character as imports.   See also *City of Detroit* v. *Lake Superior Paper Company* (1918), 202 Mich 22.   Subsequent to *Brown* v. *Maryland, supra,* it has become well-established that imports lose their constitutional immunity when the importer (1) sells them or (2) "breaks up the packages" or (3) puts them to the use for which they were imported. *Youngstown Sheet & Tube Company* v. *Bowers* (1959), 358 US 534 (79 S Ct 383, 3 L Ed 2d 490).

At the time of assessment in the present cases it appears that the imported steel was in its original package and that it was not being put to any use for which it was imported.   The city of Detroit contends, and the tax commission so held, that domestic-based companies imported the steel and sold it to defendants, thereby making the steel lose its character as an import.   Defendants argue that they are the importers.

The United States Supreme Court spoke on the issue of who is an importer in *Hooven & Allison Company* v. *Evatt* (1945), 324 US 652, 663, 664 (65 S Ct 870, 89 L Ed 1252):

"When the merchandise is brought from another country to this, the extent of its immunity from state taxation turns on the essential nature of the transaction, considered in the light of the constitutional purpose, and not on the formalities with which the importation is conducted or on the technical procedures by which it is effected. It is common knowledge to lawyers and businessmen that vast quantities of merchandise are annually imported into this country by purchasers resident here, for sale or manufacture here. Sometimes the buyer completes the purchase abroad, in person, and ships to this country; sometimes, as in this case, the purchase is on unsecured credit, but more often it is under contracts by which the vendor reserves in himself or his agent or a banker a lien or title as security for payment of the purchase price on or after arrival. To say that the purchaser is any the less an importer in the one case than in the others, is to ignore the constitutional purpose and substitute form for substance. \* \* \*

"It is enough for present purposes that the merchandise in this case was imported; and that petitioner was the efficient cause of its importation, the purpose and effect of which was petitioner's acquisition of the merchandise for its manufacture into finished goods. We conclude that petitioner was the importer, and that the merchandise in its hands was entitled to the constitutional tax immunity, surviving delivery of the imports to it."

There are many factual similarities between the *Hooven Case, supra,* and these consolidated steel cases. In both instances the taxpayers placed orders with domestic corporate intermediaries for merchandise which originated in a foreign country.

The price included charges for ocean freight, insurance, and customs. The goods were specifically marked when they left the foreign port to identify the product for the taxpayer, except in a few instances when the sales took place while the steel was en route. In *Hooven,* the contract for sale between the domestic seaboard company and the Ohio manufacturer read, "for the account of" the foreign producer. Payment went directly from the Ohio manufacturer to the foreign producer and credit was extended by the foreign company.

In the present cases the defendants contracted with companies which extended their own credit and received all payments for their own accounts. The precise relationship between the domestic companies and the foreign mills (or brokers in some cases) does not clearly appear on the records, but it can be discerned that the domestic concerns entered into separate and distinct contracts with the foreign sellers.

There are two transactions involved in the *Kenwal Case* that differ from the other transactions in these consolidated cases. Kenwal entered into joint ventures with M. W. Zack Metal Company and the Donovan Wire & Iron Company. Zack and Donovan each ordered an entire shipload of steel through intermediaries, with the agreement that Kenwal would participate by taking half of each shipload. For convenience, all of the documents were made in the names of Zack and Donovan. We see no reason to treat these transactions any differently than the other sales involved in these consolidated cases.

In determining who is the "efficient cause" of importation in the constitutional sense, we must look beyond matters of form to the substance of the transaction. Perhaps the most significant substantive matter which the Supreme Court emphasized in

*Hooven, supra,* 661, was the fact that performance of the contract called for, and necessarily resulted in, importation of the merchandise. Defendants' contracts with the domestic intermediaries specified that the steel was to be shipped from a foreign country or was already en route directly to the defendants. Performance of these contracts then, as in *Hooven,* called for, and necessarily resulted in, importation. In our opinion the transactions in these cases fall within the scope of the *Hooven* decision.

The orders of the tax commission are vacated.

T. G. KAVANAGH, P. J., and FITZGERALD, J., concurred.