## CITY OF DETROIT v. KLOCKNER, INC.

1. CONSTITUTIONAL LAW—TAXATION—IMPORTED GOODS.

   Taxation imposed by the states upon imported goods, whether levied directly on the goods imported or indirectly by burdening the right to dispose of them, is repugnant to that provision of the United States Constitution providing that no state shall, without the consent of Congress, lay any imposts or duties on imports or exports (US Const, art 1, § 10[2]).

2. CONSTITUTIONAL LAW — TAXATION — IMPORTED GOODS — ORIGINAL PACKAGE.

   Imported goods preserve their character as imports and thus are not subject to either direct or indirect state taxation as long as they remain unsold in the original package in which they were imported.

3. TAXATION—PERSONAL PROPERTY—IMPORTED GOODS.

   Coils of steel wire imported from Germany and stored in a field warehouse for later withdrawal by the buyer, with purchase by the buyer occurring only when the buyer withdrew stock pursuant to terms of a contract between importer and buyer, had not been so put to the use for which they had been imported as to lose their character as imports and therefore were not subject to taxation as personal property by the city of Detroit.

---

REFERENCES FOR POINTS IN HEADNOTES

[1-3] 51 Am Jur, Taxation §§ 103, 105.
[2, 3] What is an "original package" within interstate or international commerce. 26 ALR 971.

Appeal from Court of Appeals, Division 1, T. G. Kavanagh, P. J., and Fitzgerald and R. B. Burns, JJ., reversing the Michigan State Tax Commission. Submitted November 5, 1969. (Calendar No. 17, Docket No. 52,278.) Decided January 12, 1970.

14 Mich App 662, affirmed.

The City of Detroit determined that the value of certain steel wire owned by Klockner, Inc., a foreign corporation, should be placed on the City of Detroit personal property assessment rolls. Defendant appealed to Michigan State Tax Commission which affirmed the determination. Defendant appealed to Court of Appeals. Reversed. The City of Detroit, the Board of Assessors of the City of Detroit, and the Michigan State Tax Commission appeal. Court of Appeals affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *T. Carl Holbrook* and *Richard R. Roesch,* Assistant Attorneys General, for plaintiff State Tax Commission.

*Robert Reese,* Corporation Counsel, *Julius Pliskow* and *Arthur Yim,* Assistants Corporation Counsel, for plaintiff City of Detroit Board of Assessors.

*Hill, Lewis, Adams, Goodrich & Tate* (*Timothy D. Wittlinger,* of counsel), for defendant.

BLACK, J. Defendant Klockner is an agent of certain German steel mills. It imports and sells the products of those mills in the United States. In June of 1965 Ewald Steel Sales & Supply Co. of Detroit, as "Buyer," contracted with Klockner, as

"Seller," for the purchase of steel products on a continuing basis. The contract provided that all products ordered by Ewald should be delivered by Klockner to Douglas Public Warehouse, Inc., of Detroit. The contract designated the Douglas warehouse as "Storage Facilities." The presently important provisions of the contract read:

"3. *Terms Respecting Storage Facilities.* During the term of this agreement, Douglas shall have exclusive use and possession of the storage facilities for the storage of steel products which seller has caused to be delivered there and buyer shall not be permitted to withdraw any such steel products except pursuant to paragraph 10 or paragraph 11 hereof. No other goods shall be placed or stored in the storage facilities. * * * Buyer shall do all other acts and execute such documents as seller or Douglas may require or as may be required by the laws of the State of Michigan from time to time in order to evidence seller's full ownership of the steel products stored in the storage facilities.

"10. *Purchase of Steel Products by Buyer.* Whenever buyer wishes to purchase any steel products which are located at the storage facilities it shall, subject to the provisions of paragraph 11 hereof, sign a certificate of release for the steel products which it desires to purchase and upon such signing buyer shall be entitled to withdraw the steel products enumerated therein.

"Withdrawal by buyer from the storage facilities of any steel products shall constitute purchase by buyer of such products and upon such purchase title to such steel products shall pass to buyer and buyer shall, automatically and without further act, be and become indebted to seller in an amount equal to the price specified in the steel products request for such steel products, plus interest at the rate of 6% per annum for the period elapsed between the ar-

rival of such steel products at the storage facilities to the date when payment therefor has been made by buyer as hereinafter in this paragraph 10 set forth."

The steel involved in this case arrived via the St. Lawrence Seaway at the Detroit Marine Terminal. It consisted of several thousand coils of soft steel wire, upon which Detroit levied a personal tax in the sum of $27,460. The levy was made shortly after the coils had been delivered by Klockner to the designated warehouse. About the same time, and while the coils remained in the warehouse, they were inspected by Ewald. Ewald promptly rejected all of them for damage at sea, caused by exposure thereof to salt water. The rejection seems to have been justified, Klockner having immediately authorized sale of the rejected coils by its marine insurers, "to be effected for account of the undersigned [Klockner]."

Klockner, alleging immunity of the coils from the tax thus locally assessed, appealed to the State Tax Commission. There the tax was upheld. Klockner's appeal to the Court of Appeals resulted in reversal (*City of Detroit* v. *Klockner, Inc.* [1968], 14 Mich App 662). We granted leave to review (381 Mich 810) upon allegation of Detroit joined by the Attorney General that Division 1 had erred in failing to apply the conclusion reached in *Youngstown Sheet & Tube Co.* v. *Bowers* (1959), 358 US 534 (79 S Ct 383, 3 L Ed 2d 490), namely, that the imported goods had been so put to the use for which they were imported as to lose their character as imports.

In the factually apposite case of *City of Detroit* v. *Lake Superior Paper Co.* (1918), 202 Mich 22, this Court pointed out that the storage by the defendant importer of the bales of paper Detroit sought to

tax, in the importer's warehouse at Detroit, that and nothing more, did not so change the character of such imports as to "become a part of the general property of the State liable to State taxation." (p 27.) Citing *Brown* v. *Maryland* (1827), 25 US (12 Wheat) 419 (6 L Ed 678), and *American Steel & Wire Company* v. *Speed* (1904), 192 US 500 (24 S Ct 365, 48 L Ed 538), our Court quoted and applied, as we do now, this passage which appears in the *American Steel Case* at 519:

"Since *Brown* v. *Maryland,* 12 Wheat (US) 419, it has not been open to question that taxation imposed by the States upon imported goods, whether levied directly on the goods imported or indirectly by burdening the right to dispose of them, is repugnant to that provision of the Constitution providing that 'No State shall, without the consent of the congress, lay any imposts or duties on imports or exports.' Article I, sec. 10, paragraph 2. And *Brown* v. *Maryland* also settled that where goods were imported they preserved their character, as imports, and were therefore not subject to either direct or indirect State taxation as long as they were unsold in the original packages in which they were imported."

No error appears. The reviewed issue is controlled, both as to identity of controlling facts and applied tests, by *Hooven & Allison Co.* v. *Evatt* (1945), 324 US 652 (65 S Ct 870, 89 L Ed 1252). As for *Youngstown Sheet & Tube Co.* v. *Bowers, supra,* that case simply does not fit our facts. There the two taxpayers were manufacturers in the United States of imported ores and lumber, one making steel in part and the other plywood in part from such imports. In each instance the imports were found "irrevocably committed" to use in manufacture by the two manufacturers. The Court's opinion

is distinguishable here for the same reason as was given by its writer for distinguishing *Hooven*.

Affirmed. Costs to appellee.

T. E. BRENNAN, C. J., and DETHMERS, KELLY, T. M. KAVANAGH, and ADAMS, JJ., concurred with BLACK, J.

T. G. KAVANAGH, J., did not sit in this case.