GARMENT CORPORATION OF AMERICA *v.*
STATE TAX COMMISSION

1. TAXATION—IMPORTS—LOSS OF IMMUNITY—CONSTITUTIONAL LAW.
   Imports lose their constitutional immunity from state taxation when the importer (1) sells them or (2) breaks up the packages or (3) puts them to the use for which they were imported (US Const, art 1, § 10[2]).

2. TAXATION—IMPORTS—ORIGINAL PACKAGE—CONSTITUTIONAL LAW.
   Imported shirts were still in their "original packages" and, thus, immune from state taxation where the shirts were packed

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] State taxation as affected by Federal constitutional provisions as to imports, 89 L Ed 1279.
   State tax as affected by import-export clause of Federal Constitution-Federal cases, 95 L Ed 496.
[1–3] 51 Am Jur, Taxation §§ 103–105.
   Validity, under import-export clause of Federal Constitution, of state tax on corporations, 20 ALR2d 1279.
[2] What is an "original package" within interstate or international commerce, 26 ALR 971.

into cartons which were then packed into wheeled vans, owned by a common carrier, shipped to the United States, and, on arrival, the vans were sent to the importer's warehouses and the cartons, still unopened, were unpacked, because the vans are not the "original packages" but only a means of transportation and because the use of the vans did not go to the essential nature of the transaction (US Const, art 1, § 10[2]).

3. TAXATION—IMPORTS—IMMUNITY—ESSENTIAL NATURE OF TRANSACTION.

The extent of immunity of imported goods from state taxation depends on the essential nature of the transaction, considered in the light of the constitutional purpose, and not on the formalities with which the importation is conducted or on the technical procedure by which it is effected (US Const, art 1, § 10[2]).

Appeal from State Tax Commission. Submitted Division 1 March 10, 1971, at Detroit. (Docket No. 9850.) Decided April 23, 1971. Leave to appeal denied, 385 Mich 770.

The Michigan State Tax Commission determined that certain real and personal property of the Garment Corporation of America was not exempt from taxation by the City of Detroit. The Garment Corporation of America appeals. Reversed.

*Honigman, Miller, Schwartz & Cohn* (*John Sklar,* of counsel), for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *William D. Dexter* and *Richard R. Roesch,* Assistant Attorneys General, for defendant State Tax Commission.

*Michael M. Glusac,* Corporation Counsel, and *Julius C. Pliskow* and *Laurence W. Morgan,* Assistants Corporation Counsel, for defendant City of Detroit.

Before: DANHOF, P. J., and J. H. GILLIS and Mc-GREGOR, JJ.

McGREGOR, J.  This appeal is from the decision of the State Tax Commission, affirming the determination of assessment on certain of plaintiff's personal property.  Plaintiff is an importer of industrial garments, which it sells and distributes throughout the United States.  Its principal warehouse is in Detroit, with branch locations in Alabama and Oregon.  The garments, principally work shirts and pants, are manufactured in, and imported from, Puerto Rico, where the garments are compressed and packed into large, heavy-duty cardboard cases or cartons, each containing quantities ranging from 5 dozen pants to 10 or 12 dozen shirts.  Each case is then sealed with heavy sealing tape and reinforced with heavy straps or steel bands.  These cartons are packed and are then transported to plaintiff by an independent common carrier.

The carrier uses two types of vans or trailers of special construction, designed specifically for overseas shipment.  On each of the vans, the wheels are either removable or retractable, permitting loading and unloading by dockside cranes, as well as the stacking of the vans inside the ships.  Upon arrival at the port of entry, the vans are removed from the vessel, wheels are attached to those without wheels, the vans are attached to motor cabs or tractors, and are driven to the addressee terminal.  The vans themselves are basically metal bodies, each 8 feet high, 8 feet wide, and 35 feet long.  Approximately 500 cartons of shirts and pants can be placed in one of these vans.

Prior to 1968, cartons shipped in this manner were recognized by the defendant City of Detroit as being

immune from taxation, under the US Constitution, art 1, § 10(2), which provides:

"No State shall, without the Consent of the Congress, lay any Imposts or Duties on Imports or Exports * * * "

In 1968, the City of Detroit first began to assess and tax the property contained in these cartons; the city contended that the van or trailer described above which was utilized by the common carrier should be considered "original packages"[1] and that, upon arrival of the vehicle at plaintiff's warehouse, the opening and unloading of the van or trailer should be considered a breaking of the "original package". The result would be that the property had lost its essential character as an import and would no longer have its constitutional immunity from taxation.

This concept was sustained by the State Tax Commission and plaintiff appeals to this Court.

In the instant case, this Court is confronted with a question whether the property remained in its original package and was thus immune from taxation or whether plaintiff in removing the property from the vans or trailers in which it was shipped and delivered, has, within the meaning of the applicable law, so broken up the packages as to lose the constitutional immunity.

The reference to "original package" first appeared in *Brown* v. *Maryland* (1827), 25 US (12 Wheat) 419 (6 L Ed 678), and was used as an illustration or method for ascertaining whether an import had been so acted upon, altered, or commingled with a common mass of property within the state as to lose its distinctive character as an import. Our Court re-

---

[1] "Original package" refers to the doctrine first enunciated in *Brown* v. *Maryland* (1827), 25 US (12 Wheat) 419 (6 L Ed 678), which is later discussed herein.

viewed some of the leading cases interpreting US Const, art 1, § 10(2), in *City of Detroit* v. *Kenwal* (1968), 14 Mich App 657, 659, *leave to appeal denied* March 20, 1969, 381 Mich 811, *cert den,* 396 US 833 (90 S Ct 87, 24 L Ed 2d 83); and summarized the applicable law:

"In *Brown* v. *Maryland* (1827), 25 US (12 Wheat) 419 (6 L Ed 678), the Supreme Court invalidated a state licensing tax and held that a state could not tax imports as long as the property remained in its original form or package. *Low* v. *Austin* (1872), 80 US (13 Wall) 29 (20 L Ed 517), expanded the principles of *Brown* v. *Maryland* to prohibit states from levying *ad valorem* taxes on goods which have not lost their character as imports. See also *City of Detroit* v. *Lake Superior Paper Company* (1918), 202 Mich 22. Subsequent to *Brown* v. *Maryland, supra,* it has become well established that imports lose their constitutional immunity when the importer (1) sells them or (2) 'breaks up the packages' or (3) puts them to the use for which they were imported. *Youngstown Sheet and Tube Company* v. *Bowers* (1959), 358 US 534 (79 S Ct 383, 3 L Ed 2d 490)."

In *Kenwal, supra,* it appears that the imported steel was in its original package, and that it was not being put to any use for which it was imported, and that Kenwal was the importer and, thus, entitled to the constitutional tax immunity.

The test in *Youngstown, supra,* was whether the imported goods had been so put to the use for which they were imported as to lose their character as imports, since such merchandise had entered into the plaintiff's manufacturing process. See *City of Detroit* v. *Klockner, Inc.* (1970), 383 Mich 76, 79, 80; see also *Knight Newspapers, Inc.* v. *City of Detroit* (1969), 16 Mich 438, 441.

In the instant case, the merchandise did not lose its distinctive character as an import.

We find no merit in defendant's contention that the plaintiff in removing the imported goods from the vans in which they were shipped and delivered, had so "broken up" the original packages as to destroy their constitutional immunity. The vans were the property of the carriers who had the right to remove and store the shipper's cartons.

There is no essential difference between these vans and vehicles which are normally used in over-the-road transportation of property; the only slight difference being that they are modified to permit transportation of the entire van by ship. It can only be concluded that the vans and trailers are, in fact, vehicles, or at least instruments of transportation, and the mere use of a new technology in shipping does not destroy the tax immunity of the property shipped.

In *Hooven & Allison Company* v. *Evatt* (1945), 324 US 652, 663 (65 S Ct 870, 876, 89 L Ed 1252, 1262), the United States Supreme Court held:

"When the merchandise is brought from another country to this, the extent of its immunity from state taxation turns on the essential nature of the transaction, considered in the light of the constitutional purpose, and not on the formalities with which the importation is conducted or on the technical procedures by which it is effected."

The use of the vans here did not go to the essential nature of the transaction, but to the formalities of transportation. To hold otherwise is to extend the scope of the laws by implication or forced construction, contrary to the established law in this jurisdic-

tion. *Topps of Warren, Inc.* v. *City of Warren* (1970), 27 Mich App 59.

The decision of the State Tax Commission is reversed. Costs to plaintiff.

All concurred.