SOCOMET, INC., *v.* CITY OF DETROIT
SOCOMET, INC., *v.* COUNTY OF WAYNE

1. CONSTITUTIONAL LAW—TAXATION—IMPORTS—LOCAL TAXATION—
   IMMUNITY.
   Immunity from state taxation on foreign imports turns on the
   essential nature of the importing transaction, considered in
   the light of constitutional purposes, and not on the formalities
   with which the importation is conducted or on the technical
   procedures by which it is effected (US Const, art 1, § 10, cl 2).

2. AGENCY—UNDISCLOSED PRINCIPAL—AGENT'S ACTS—BENEFITS TO
   PRINCIPAL—THIRD PARTIES.
   An undisclosed principal is, as a general rule, entitled, as against
   third persons dealing with his agent, to the benefit of the
   agent's acts on his behalf.

3. CONSTITUTIONAL LAW—TAXATION—IMPORTS—IMMUNITY—AGENCY
   —UNDISCLOSED PRINCIPAL.
   Plaintiff was constitutionally immune as an importer from local
   personal property taxes where plaintiff's agents obligated the
   foreign producers to sell steel on credit, ship the goods to an
   American port, and to make delivery in consideration of the
   obligation to accept and pay the foreign producers for the
   merchandise; the fact that plaintiff was an undisclosed prin-
   cipal did not affect its constitutional immunity as an importer
   (US Const, art 1, § 10, cl 2).

4. AGENCY—EXISTENCE OF RELATIONSHIP.
   Finding that an import company was plaintiff company's agent
   was amply supported by the record where all of the stock of
   both companies was held by the same parent corporation, the

REFERENCES FOR POINTS IN HEADNOTES
[1, 3]  51 Am Jur, Taxation §§ 103–105.
[2]  3 Am Jur 2d, Agency § 322 *et seq.*
[4]  3 Am Jur 2d, Agency §§ 21, 22, 351.

> officers and directors of one company served the other company, all salaries were paid by the parent, plaintiff determined the amount and the specifications of imported steel to be bought, the port of entry, and the time of entry, the importer purchased the steel for plaintiff's account and plaintiff resold the steel in the United States, all purchases are financed by the parent corporation, plaintiff had title to the steel before it arrived in the United States and, sometimes before the steel had left the foreign port, plaintiff's letters of credit were supplied by the parent corporation, and all activities of the plaintiff and the importer were for the parent's benefit.

Consolidated appeals from Wayne, James Montante, J. Submitted Division 1 April 2, 1971, at Detroit. (Docket Nos. 10037–10042.) Decided May 20, 1971. Leave to appeal denied, 385 Mich 771.

Complaints by Socomet, Inc., against the City of Detroit and Wayne County for refund of personal property taxes paid under protest. Judgments for plaintiff. Defendants appeal. Affirmed.

*Katz, Victor & Yolles,* for plaintiff.

*Michael M. Glusac,* Corporation Counsel, and *Julius C. Pliskow* and *Lawrence W. Morgan,* Assistants Corporation Counsel, for defendant City of Detroit.

*William L. Cahalan,* Prosecuting Attorney, and *Aloysius J. Suchy* and *William F. Koney,* Assistant Prosecuting Attorneys, for defendant Wayne County.

Before: J. H. GILLIS, P. J., and FITZGERALD and T. M. BURNS, JJ.

FITZGERALD, J. This appeal arises from judgment entered in six consolidated actions ordering a re-

fund of personal property taxes for 1967 which the plaintiff paid under protest to the defendant city in the amount of $25,324.48 and to the defendant county in the amount of $3,916.44.

The consolidated actions dealt with 1967, 1968, and 1969 taxes. However, the trial judge limited the proofs to plaintiff's cases arising out of 1967 taxes. The remaining actions relating to 1968–1969 taxes were held in abeyance pending decision of the first group.

The subject of the assessments were certain quantities of foreign steel still in the original packages and brought into Detroit in 1966 for resale. The steel was in storage in several warehouses on tax day, December 31, 1966. Plaintiff had not done business in Detroit prior thereto, had no office in Detroit, had no processing facilities in Michigan, and maintained no domestic steel on hand.

Plaintiff had filed a 1967 personal property return showing the above-mentioned steel in its inventory but claimed it was all tax free on the basis that it was imported steel in the original packages and in warehouses under its control. Therefore, it was claimed exempt or immune under Article I, § 10, cl 2, of the Constitution of the United States.

The Board of Assessors of defendant city had first placed an assessment on the rolls for 1967 against plaintiff in the amount of $600,000. When plaintiff's personal property statement was received, it showed the value of its steel in Detroit warehouses as $799,659. The assessment was thereupon reduced to 50% of the latter amount, or $399,850, subject to investigation.

After correspondence with plaintiff and an audit conducted at plaintiff's New York office, the Board of Assessors petitioned the Michigan State Tax

Commission to increase plaintiff's 1967 assessment. After a hearing, an order was issued April 19, 1968, which increased plaintiff's assessment to $549,290.

The steel in question arrived in Detroit as a result of two types of transactions.

One transaction is referred to as the Advance Steel Co.-Gosho transaction, wherein Advance Steel allegedly acted as agent for the plaintiff in buying steel from Gosho. The plaintiff was an undisclosed principal. The defendants denied the agency and called as their witness Mr. Joseph Stewart, the president of Advance Steel. Certain documents evidencing an agency relationship were admitted and Mr. Stewart testified that Advance Steel acted as an agent for plaintiff in acquiring the steel.

Testimony and exhibits concerning the Advance Steel-Gosho transaction showed the following:

(1) Plaintiff financed the entire purchase.

(2) Documents of title were always within the control of the plaintiff.

(3) Advance made the purchase only after it agreed to act as agent for the hidden principal, the plaintiff.

(4) The purchase was for the plaintiff's account.

(5) Advance Steel never claimed any right, title, or interest in the steel and never used any of its own funds.

(6) At the time the agency was created, the steel had not been fabricated, produced, or ordered in Japan.

(7) Specifications for the contracted tonnage (gauge, size, etc.) came from the plaintiff as it determined its needs from time to time and the Japanese producer produced those specifications.

The second type of transaction involved purchases by a corporation known as Phillip Brothers

Far East.   Testimony elicited from witnesses during trial indicated that:

(1) All of the stock of the plaintiff and of Far East, as well as many other firms, was held by the same parent corporation.

(2) The officers and directors of one corporation also served the other.

(3) All salaries are paid by the parent corporation.

(4) Plaintiff is the selling arm for steel in the United States.

(5) Plaintiff determines through its agents how much steel to purchase, the specifications of the steel, the port of entry, and time of entry.

(6) Far East places orders in Japan for the ultimate account of the plaintiff which resells the steel in the United States.

(7) All purchases are financed by the parent corporation.

(8) Plaintiff was the first and only owner of the steel when it arrived in the United States.

(9) Title to the steel vested in plaintiff before the steel arrived in the United States and in some cases before it left the foreign port.  In all cases, plaintiff had control of the title documents from the time the foreign producer receives payment in a foreign country by satisfaction of the letter of credit supplied by the parent corporation.

(10) All letters of credit were always satisfied before the steel left the foreign producer's control.

(11) All activities of Far East and of plaintiff were for the benefit of the same parent corporation.

The trial court found that in both types of transactions the plaintiff was the importer within the constitutional meaning and was entitled to immunity from the personal property tax.  The trial court ordered a refund of the taxes paid by the plaintiff

to the defendants in the approximate amount of $30,000.

The defendants appeal from all six judgments.

Article I, § 10, cl 2, of the United States Constitution provides:

"No state shall, without the consent of the Congress, lay any imposts or duties on imports or exports   *   *   *   ."

MCLA § 211.1 (Stat Ann 1960 Rev § 7.1) provides:

"That all property, real and personal, within the jurisdiction of this state, not expressly exempted, shall be subject to taxation."

The question of primary concern is whether plaintiff is an importer under Article I, § 10, cl 2, *supra.* A review of the leading cases interpreting US Const, Art I, § 10, cl 2, *supra,* may be found in *City of Detroit* v. *Kenwal Products Corporation* (1968), 14 Mich App 657, 659, wherein this Court stated:

"In *Brown* v. *Maryland* (1827), 25 US (12 Wheat) 419 (6 L Ed 678), the Supreme Court invalidated a state licensing tax and held that *a state could not tax imports as long as the property remained in its original form or package. Low* v. *Austin* (1872), 80 US (13 Wall) 29 (20 L Ed 517), expanded the principles of *Brown* v. *Maryland to prohibit states from levying ad valorem taxes on goods which have not lost their character as imports.* See also *City of Detroit* v. *Lake Superior Paper Company* (1918), 202 Mich 22. Subsequent to *Brown* v. *Maryland, supra,* it has become well-established that imports lose their constitutional immunity when the importer (1) sells them or (2) 'breaks up the packages' or (3) puts them to the use for which they were imported. *Youngstown Sheet & Tube Company* v.

*Bowers* (1959), 358 US 534 (79 S Ct 383, 3 L Ed 2d 490)." (Emphasis supplied.)

Defendants argue that plaintiff purchased and imported steel from the original importers and, therefore, was not constitutionally immune from taxation as an importer. Plaintiff contends that the steel was imported by its agents who were acting under its control and direction.

In *Hooven & Allison Co.* v. *Evatt* (1945), 324 US 652, 663 (65 S Ct 870, 876; 89 L Ed 1252, 1262) the United States Supreme Court held:

"*When the merchandise is brought from another country* to this, [the United States] the extent of *its* [constitutional] immunity from state taxation *turns on the essential nature of the transaction,* considered in the light of the constitutional purpose, *and not on the formalities with which the importation is conducted* or on the technical procedures by which it is effected." (Emphasis supplied.)

It is a general rule that an undisclosed principal is entitled, as against third persons dealing with his agent, to the benefit of the agent's acts on his behalf. See *Grand Rapids Milk Producers Ass'n* v. *McGavin* (1940), 295 Mich 477; *American Enameled Brick & Tile Co.* v. *Brozek* (1930), 251 Mich 7; *Jenness* v. *Shaw* (1876), 35 Mich 20. See, also, *First Nat. Bank of Denver* v. *Federal Reserve Bank of Kansas City, Mo.* (CA8, 1925), 6 F2d 339, 344. There is no dispute that Advance Steel and Phillip Brothers Far East obligated the foreign producers to sell steel on credit, ship the goods to an American port, and make delivery in consideration of the obligation to accept and pay said foreign sources therefor.

With these facts before us, the question now seems to turn on the sufficiency and weight of the evidence. More precisely stated, whether plaintiff

sufficiently demonstrated that Advance Steel and Phillip Brothers Far East were its agents. GCR 1963, 517.1, which deals with findings by the court, provides in part:

"In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment. It will be sufficient if the court makes brief, definite, and pertinent findings and conclusions upon the contested matters without over-elaboration of detail or particularization of facts. * * * Requests for findings are not necessary for purposes of review. No exception need be taken to any finding or decision. Findings of fact shall not be set aside unless clearly erroneous * * * regard shall be given to the special opportunity of the trial court to judge the credibility of those witnesses who appeared before it. [As amended February 13, 1969, immed. effect.]"

Therefore, a careful review of the record clearly indicates that the trial court's findings are adequately supported, and had we heard the testimony and observed the witnesses, we would not have reached a different result.

Affirmed. No costs, a public question.

All concurred.